Linnon McClendon was convicted of armed robbery and sentenced to thirty years imprisonment with five years suspended. From this conviction and sentence in the Circuit Court of the First Judicial District of Hinds County, he appeals. For reversal he argues the lower court erred (1) in overruling his motion to dismiss because of double jeopardy, (2) in not affording him due process and because the trial court denied him a transcript of earlier proceedings, and (3) in permitting the State to interrogate him upon irrelevant matters.
McClendon's first trial began on March 22, 1979, when the State called Junior Roby, its first witness, who testified that he was robbed at gunpoint and that he saw one of the robbers in the courtroom. Prior to his anticipated identification, a motion was made by McClendon for a hearing outside the presence of the jury. The motion was sustained, and Roby was called as a witness by the defendant and questioned about his identification of one of the robbers. During this hearing he positively identified McClendon as one of the men who had robbed him by force of arms. At the conclusion of his testimony, Officer Stubblefield was called as a witness by McClendon but was not available, necessitating a short recess of the court to obtain the witness. Stubblefield thereafter became a witness and gave some testimony outside the jury's presence before the court observed and called to the attention of the attorneys that the court reporter was not present and that the testimony of Stubblefield had not been recorded to that point. This led to the following colloquy between the court and defense counsel and motion: *Page 114 
 BY THE COURT:
 What I'm asking you, if there is a motion for a mistrial.
 BY MR. ALEXANDER:
 Yes, sir, we ask the Court for a mistrial.
 BY THE COURT:
 I see no basis but to grant the motion that a mistrial be granted. Reset the case for next week if possible.
The second trial transpired in June 1979, leading to the conviction and this appeal. It also led to a plea of double jeopardy by McClendon. Although Crist, Warden v. Bretz,437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), announces the federal rule on double jeopardy now applicable to the various states through the Fourteenth Amendment to the United States Constitution, we think the present facts distinguish this case from it. In Crist, the following questions were propounded to the Court:
 "1. Is the rule heretofore applied in the federal courts — that jeopardy attaches in jury trials when the jury is sworn — constitutionally mandated?
 2. Should this Court hold that the Constitution does not require jeopardy to attach in any trial — state or federal, jury or nonjury — until the first witness is sworn?" (437 U.S. at 32, 98 S.Ct. at 2158, 57 L.Ed.2d at 29)
It responded as follows:
 We agree with the Court of Appeals that the time when jeopardy attaches in a jury trial "serves as the lynchpin for all double jeopardy jurisprudence." 546 F.2d at 1343. In Illinois v. Somerville, supra,
[410 U.S. 458] at 467, [93 S.Ct. 1066 at 1072, 35 L.Ed.2d 425] a case involving the application of the Double Jeopardy Clause through the Fourteenth Amendment, the Court said that "jeopardy `attached' when the first jury was selected and sworn." Today we explicitly hold what Somerville assumed: The federal rule that jeopardy attaches when the jury is empaneled and sworn is an integral part of the constitutional guarantee against double jeopardy.
 . . . . .
 (437 U.S. at 38, 98 S.Ct. at 2162, 57 L.Ed.2d at 33)
The reasoning of our highest Court was that a defendant has a constitutional right to be tried by the particular jury that had been empaneled and sworn. In Crist, however, the prosecution moved the trial court to dismiss the entire information so that a new one could be filed. Presently, the mistrial was requested by the defendant, a significant distinguishing factor, thereby waiving his right to a trial by the particular jury that had been empaneled and sworn. In United States v. Scott, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), it was held the constitutional right to trial by the jury empaneled was subject to being waived by a defendant's motion for a mistrial. The Court stated:
. . . Such a motion by the defendant is deemed to be a deliberate election on his part to forego his valued right to have his guilt or innocence determined before the first trier of fact. . . .
 (437 U.S. at 93, 98 S.Ct. at 2195, 57 L.Ed.2d at 76)
The defendant having requested the mistrial, we are of the opinion that double jeopardy did not attach and the trial court consequently did not err in this regard.
It is next contended there was error in failing to provide at state expense a transcript of the March 22, 1979, trial. There is no doubt that appellant is indigent and represented by court-appointed counsel. However, at the beginning of the second trial, a double jeopardy plea was interposed and argued. The plea was denied and when asked, defense counsel announced ready for trial. Whereupon the jury was selected and the trial began with Roby again the State's first witness. He was asked whether he could identify the person who robbed him and the defendant objected to "any testimony along this line."
The jury retired and there followed a motion and discussion concerning the transcript of the previously aborted proceedings. From the record before us, it does appear that defense counsel in the first trial *Page 115 
had interrogated Officer Stubblefield after the court reporter returned, but this transcript was not available to him during the second trial. While the trial judge may have technically erred in the first trial in denying the motion for the transcript, we are of the opinion it did not prejudice the defendant in this trial because his counsel had equal knowledge with the state's attorney of the events of the first trial. Moreover, he announced ready for trial and only renewed his motion for the transcript after the trial was under way. Had the motion been sustained, a second disruptive mistrial would have resulted.
Finally, the transcript is before us and review of its five and one-half pages reveals nothing prejudicial. It concerns the number of photographs exhibited to Roby in an endeavor to identify his assailants. Stubblefield stated he presented Roby five or six photographs while Roby testified that he identified McClendon from a large stack of photographs. Because there is no evidence that Stubblefield's presentation was suggestive or improper, the interrogation was nothing more than an attempt to impeach the witness upon an irrelevant point. The identification of McClendon was the relevant point rather than the number of photographs observed before the identification was made.
In making the above statements, we do not diminish, indeed we have no authority to, the significance of Britt v. NorthCarolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1972), which provides as a matter of equal protection the state must supply an indigent defendant with a transcript of prior proceedings when it is needed for an effective defense, on retrial, or appeal. We conclude this assignment of error is without merit.
McClendon also contends the prosecution's questions on cross-examination about the circumstances of his arrest constituted gross misconduct greatly prejudicing him. The record discloses that at the time of his arrest McClendon falsified his identification, representing himself to be one Leon Thompson, and corroborated this by exhibiting a driver's license to the arresting officer which had the name Leon Thompson on it. Only when confronted with his photograph did McClendon acknowledge his true identity. The questions directed to McClendon on cross-examination concerning this episode were not error, in our opinion. In 2 Wigmore on Evidence, 3d Ed., section 279, it is stated:
 [I]t is today universally conceded that the fact of an accused's flight, escape from custody, resistence to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.
And Cobb v. State, 282 So.2d 327 (Ala. App. 1973), is persuasive to the same point of view. We think this assignment without merit.
Finally, the record before us convincingly demonstrates that appellant was given a fair and impartial trial without substantial error or prejudice and that the jury's verdict is in accord with the evidence.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.